UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**GS HOLISTIC LLC,**

   Plaintiff,

v.                                         No. 4:23-cv-00409-P

**DANA USA LLC, ET AL.,**

   Defendants.

## ORDER

Before the Court is Plaintiff's Motion for Default Judgment. ECF No. 12. Having considered the Motion and applicable law, the Court determines the Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiff GS Holistic, LLC ("GS") manufactures and markets the Stündenglass™ line of glass gravity infusers. Defendant DANA USA LLC ("DANA") is vape shop that sells vape related products. What's the difference? GS's line of high-end gravity infusers consists of "precision-machined hardware" with 360° rotatable activation, percolated water filtration, and a contactless smoke delivery system.[1] The Stündenglass line has numerous functionalities for the food and beverage industry, though the infusers can admittedly be used for less wholesome purposes. DANA's counterfeit products are sold in an aforementioned vape shop, ostensibly for licit purposes but in practice almost exclusively used to smoke marijuana. DANA sold bongs that mimic the Stündenglass protected marks and GS found out. GS sued DANA and its owner, Azzam Hani Alqala Wi, under the Lanham Act. Defendants failed to answer or otherwise respond to the Complaint and the Clerk entered default on August 30, 2023. GS now moves for default judgment. In

---

[1] *See* GLASS GRAVITY INFUSER FEATURES, https://stundenglass.com/ (last visited Dec. 7, 2023).

addition, GS's Motion seeks injunctive relief as provided for in the Lanham Act.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for default judgments. If a defendant doesn't "plead or otherwise defend" against a claim, the Clerk must enter default upon a requisite showing from the plaintiff. *See* Fed. R. Civ. P. 55(a). If a defendant no-showed and damages are readily calculable, the Court may enter default judgment upon timely motion from the plaintiff without a hearing. *See id.* at 55(b). Still, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (cleaned up).

Consistent with Fifth Circuit policy favoring judgments on the merits, default judgments are highly disfavored. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The default-judgment analysis is three-pronged. *First*, the Court asks if default judgment is procedurally proper. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).[2] *Second*, the Court "assess[e]s the substantive merits of the plaintiff's claim and determine[s] whether there is a sufficient basis in the pleadings for the judgment." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015) (noting default judgments "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings" (cleaned up)). *Third*, the Court determines what relief is proper. *See Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002). In doing so, the Court assumes the plaintiff's uncontested allegations are true,

---

[2]The Court answers this question with an eye toward six considerations: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the Court would think itself obliged to set aside the default on the defendant's motion." *Id.*

except those regarding damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## ANALYSIS

The Clerk entered default on August 30, 2023 against both Defendants and GS timely moved for default judgment on September 14, 2023. *See* ECF Nos. 11, 12. But "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default," *Lewis*, 236 F.3d at 767, so the Court must still determine if default judgment is warranted. As explained below, it is.

### A. Default judgment is procedurally proper.

Because default judgments are highly disfavored, the Court must ensure GS has properly followed all procedures to be entitled to default judgment. The Fifth Circuit strongly favors judgments on the merits rather than on procedural technicalities like default. *See Sun Bank of Ocala*, 874 F.2d at 276. The Court's analysis is framed by the six *Lindsey* factors. *See* 161 F.3d at 893. As explained below, the *Lindsey* analysis supports default judgment in GS's favor.

1. <u>Material Issues of Fact.</u>

*First,* Default judgments are improper where material issues of fact remain notwithstanding a defendant's default. *Lindsey*, 161 F.3d at 893; *see also id.* at 895 (considering only "purely factual material relating to the merits of the [claim]" (cleaned up)). No issues related to materials issue of fact exist in this case. Under default judgment analysis, and explained below, Defendants' default means the Court must assume the validity of GS's pleadings (save those relating to damages). To prevail on its claim, GS must show nonconsensual commercial use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. GS satisfied the statutory requirements by briefing the elements of its trademark claim with meticulous granularity. *See* ECF Nos. 1 at 5–12; 13 at 6–9. By showing its ownership of the relevant copyrights and Defendants' copying thereof, GS eliminated any remaining factual issues that would preclude default

3

judgment. The first *Lindsey* factor thus favors default judgment. *See* 161 F.3d at 893.

2. Substantial Prejudice.

*Second*, Default judgments are also improper if they would substantially prejudice a litigant's rights. *See Lindsey*, 161 F.3d at 893. Here, Defendants' refusal to engage the litigation process has substantially prejudiced GS's rights. GS filed its Complaint on April 25 and served both DANA and Wi on May 16. *See* ECF Nos. 1, 8, 9. GS has thus been precluded from recovery for over seven months. This length of delay is substantially prejudicial. *See Sun Bank of Ocala*, 874 F.2d at 276–77. On the flip side, nothing indicates Defendants would be unfairly prejudiced by a default judgment considering they have chosen to ignore opportunities to contest the allegations against them. Accordingly, this factor also supports default judgment.

3. Clearly Established Grounds for Default.

*Third*, because default judgments are "resorted to by courts only in extreme situations," the slightest uncertainty as to the grounds for default will defeat judgment. *See Sun Bank of Ocala*, 874 F.2d at 276. But GS has clearly established all grounds for default. *See* ECF No. 12 at 6–13. Because the grounds of Defendants' default are clear, this factor also supports default judgment.

4. Good Faith Mistake & Excusable Neglect / Harshness.

*Fourth*, while initially articulated as distinct, *Lindsey*'s "good faith mistake and excusable neglect" prong is inextricably intertwined with the "harshness" prong. All judgments are harsh for the losing party—default judgments even more so. But if the defaulting party defaulted because of a "good faith mistake" or "excusable neglect," a default judgment may be too harsh. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (collecting cases to show examples of "excusable" neglect). Here, the record is devoid of any evidence suggesting "excusable neglect" caused Defendants' default. They were served with process (ECF Nos. 8, 9) and had every opportunity to contest GS's claims. They have not done so, or indicated to the Court that they have any intention of doing so.

4

The Fifth Circuit has clarified that neglect isn't excusable where there's a "clear record of delay or contumacious conduct." *Sun Bank of Ocala*, 874 F.2d at 277. Defendants have been by making no efforts to try this case despite GS doing everything proper to initiate the proceeding. The Court doesn't know why Defendants refused to litigate the case because they haven't entered an appearance or otherwise contacted the Court or GS's counsel. As such, this factor also supports default judgment.

    5. <u>The Court's Obligation to Set Aside Default Judgment.</u>

*Fifth*, the final consideration under *Lindsey* asks "whether the court would think itself obliged to set aside the default on the defendant's motion." *See* 161 F.3d at 893. This is inherently subjective, as one court may "think" something different from another under the circumstances of a given case. In any event, considering every other factor from *Lindsey* favors default judgment, the Court would be disinclined to change its mind if Defendants moved for reconsideration. Accordingly, default judgment is procedurally proper under the *Lindsey* factors.

**B. Default judgment is substantively proper.**

Default judgments must be warranted procedurally and substantively. *See Nishimatsu*, 515 F.2d at 1206. Having addressed procedural propriety, the Court now looks to the substantive merits of GS's claims. Even accepting the Complaint's uncontested allegations as true, the Court must scrutinize the pleadings to determine if default judgment is warranted. Here, it is.

To prevail on a Lanham act claim, a plaintiff "must show two elements: (1) it possess a legally protectable trademark and (2) [the alleged infringer's] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (internal citation and quotation marks omitted). As noted above, GS has established ownership of U.S. Trademark Nos. 6,633,884 (for the "Stündenglass" mark associated with goods in international class 011); 6,174,291 (for the same mark associated with goods in international

class 034); and 6,174,292 (for the design and "S" logo associated with goods in international class 034). *See* ECF No. 1 at 10.

GS also established Defendants' use of infringing products to "create[] a likelihood of confusion as to source, affiliation, or sponsorship." *See Streamline Prod. Sys.*, 851 F.3d at 450. One example that seems particularly likely to create confusion was Defendants' outright copying of the "Stündenglass" mark for several top-market bongs it sold. *See* ECF No. 1 at 6 (recounting GS's investigator purchasing "a Glass Infuser which displayed the Stündenglass Trademarks . . . for a cost of $595.36"). GS detailed ad nauseum myriad examples of Defendants' infringements vis-à-vis the above trademarks. *See, e.g.*, ECF Nos. 1 at 6–12. These examples, coupled with clear proof of trademark ownership, establish the substantive merits of GS's claim. The Court next addresses damages and costs.

### C. GS is entitled to $150,000 in damages and $782 in costs.

Having established Defendants' infringement, GS is entitled to damages and the costs reasonably incurred in bringing this action. The Court addresses each request below.

1. Statutory Damages.

Because the pleadings establish Defendants' use of three counterfeit marks, GS is entitled to its choice between actual damages and statutory damages. *See* 15 U.S.C. § 1117(c). GS seeks the latter. Depending on a willfulness determination, the Court may award statutory damages of $1,000–$200,000 per mark (if non-willful) or up to $2,000,000 per mark (if willful). *See id.* §§ 1117(c)(1)–(2). Damages determinations are context-specific, so "[g]reat latitude is given the district court in awarding damages under the Lanham Act, which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) (cleaned up).

GS reasonably requests an award of $50,000/mark for a total of $150,000. *See* ECF No. 12 at 11. While only a quarter of the statutory maximum GS could recover for each instance of infringement, this

6

amount seems to account for the relative size-differential between DANA and GS. For its part, GS "has approximately 3,000 authorized stores in the United States selling its products." ECF No. 1 at 4. DANA is a single storefront in Arlington, Texas. *Id.* at 2. That very fact may underscore the gravity of GS's injury, as it doesn't want its business associated with Defendants. "Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States [and] has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand." *Id.* at 4. So, the Court understands why GS wouldn't want any confusion or perceived association with DANA. However, DANA's small size also weighs against an excessive damages award. The Court thus finds $50,000/mark reasonable and **GRANTS** GS's requested damages of $150,000.

2. Reasonably Incurred Costs.

GS is also entitled to costs reasonably incurred in bringing this action. *See* 15 U.S.C. § 1117(a). Here, GS seeks $1,442.36, which consists of the Court's filing fee ($402), the process server's fee ($380) and GS's "investigation" fees ($660.36). *See* ECF No. 13 at 12. But the Court doesn't interpret the statutory language "costs of the action" (15 U.S.C. § 1117(a)) to include external costs like "investigation" fees. While such auxiliary costs may be necessary for successful litigation, those aren't taxable costs of court, they're merely the price of play. Accordingly, the Court excludes those costs from this Order and **GRANTS** $782 in reasonably incurred costs to GS. Having determined an appropriate award of damages and costs, the Court next turns to GS's request for injunctive relief and the destruction of infringing goods under 15 U.S.C. §§ 1116, 1118.

### D. GS is entitled to injunctive relief, but the Court declines to order the destruction of remaining infringing goods.

Finally, GS seeks injunctive relief under 15 U.S.C. § 1116 and the destruction of DANA's remaining infringing merchandise under 15 U.S.C. § 1118. The Court's analysis here is straightforward. Section 1116 empowers the Court to enjoin DANA's further acts of infringement

and grants GS a "rebuttable presumption of irreparable harm upon a finding of a violation [of the Act]." *See* 15 U.S.C. § 1116(a). Because DANA's violations are so clearly documented in GS's pleadings, the Court finds an injunction proper "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." *See id.* But the destruction of remaining infringing goods is another matter.

Under 15 U.S.C. § 1118, the holder of an infringed trademark may ask the Court to order all remaining infringing products destroyed. But the Act makes clear that such a decision is discretionary; the Court *may* issue such an order, but it does not *have* to. Exercising such discretion here, the Court declines to order the delivery and destruction of remaining infringing products. Given default judgments are themselves "highly disfavored," *Sun Bank of Ocala*, 874 F.2d at 276., and *ex parte* injunctive relief is an "extraordinary remedy" the courts should not lightly grant, *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985), The Court is disinclined to compound its grants of extraordinary relief by ordering such a drastic remedy without Defendants present.

A trial court doesn't abuse its discretion by denying the delivery and destruction of infringing materials. *See Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 127 (5th Cir. 1966) (collecting cases). Moreover, the Court's injunction has affirmatively halted Defendants further commercial use of any infringing products, giving GS grounds to seek further relief if Defendants ever fail to comply. GS has provided no reason to believe an injunction alone will prove insufficient to protect GS's intellectual property from further misuse. GS also provides no evidence as to how many infringing products remain in Defendants custody, especially considering DANA operates only a single commercial establishment. Believing an injunction will suffice to eliminate further infringing commerce, the Court **DENIES** GS's request to order the delivery and destruction of an unknown quantity of remaining infringing products.

8

## CONCLUSION

For the above reasons, the Court finds default judgment appropriate in this action. Accordingly, the Court **ORDERS** that default judgment is entered in favor of Plaintiff GS Holistic, LLC. The Court **AWARDS $150,000 in damages** to Plaintiff, along with **$782 in costs**. In addition, the Court **ORDERS** that Defendants be **ENJOINED** from the following:

Importing, exporting, making, manufacturing, reproducing, assembling, acquiring, purchasing, offering, selling, transferring, brokering, consigning, distributing, storing, shipping, licensing, developing, displaying, delivering, marketing, advertising, or promoting the counterfeit Stündenglass products identified in the Complaint and/or any other unauthorized imitations of Stündenglass products; and Assisting, aiding, or attempting to assist or aid, any other person or entity in performing any of the prohibited activities enumerated in section of this Injunction.

**SO ORDERED** on this **7th day of December 2023.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE